HOLT, Respondent, v. MAHONEY, et al, Appellants.

(244 N. W. 98.)

(File No. 7315. Opinion filed August 30, 1932.)

*Windsor Doherty,* of Winner, *M. Q. Sharpe,* of Kennebec, and *Gaines, McGilton, McLaughlin & Gaines,* for Appellant.

*John M. Tucker,* of Valentine, Neb., and *W. J. Hooper,* of Gregory, for Respondent.

POLLEY, J. This action was brought to recover on three promissory notes and to foreclose three chattel mortgages given to secure the payment of said notes. All of said notes and mortgages were executed by the defendant Joseph Mahoney, who was a citizen of the state of Nebraska. The first note for $6,500 was

executed on the 16th day of November, 1925, and payable March 16, 1926. The second note is for $4,500, dated January 16, 1926, and due June 10, 1926. The third note is dated March 24, 1926, and due on demand. All three of these notes were executed and delivered at Johnstown in the state of Nebraska, and were payable at the Citizens' Bank in Johnstown, Neb. The mortgage given to secure the first note described 100 head of cattle located on a certain half section of land in Todd county, S. D. This mortgage was filed in the office of the register of deeds of Lyman county on the 20th day of November, 1925. The second mortgage described 330 head of hogs and 2,000 bushels of corn on the same farm in Todd county, S. D., and was filed in the office of the register of deeds of Lyman county on the 25th day of January, 1926; and the third mortgage described 78 head of cattle, 200 head of hogs, and 2,500 bushels of corn situated on the said farm. All the property described in this mortgage is included in the property described in the other two mortgages. This third mortgage was filed in the office of the register of deeds of Lyman county on the 27th day of March, 1926. At the time these mortgages were filed as aforesaid, Todd county was attached to Lyman county for judicial purposes. The payee in all of the notes was an officer of the Citizens' Bank of Johnstown, but it is conceded that said notes and mortgages were the property of the said Citizens' Bank, and were duly assigned to plaintiff.

On or about the 10th day of December, 1925, the defendant Mansour sold to the defendant Mahoney some 3,000 bushels of corn and some other feed on the said farm in Todd county, S. D., upon which the live stock described in the above mortgages was then located, and the corn described in the third mortgage above referred to was a part of the corn sold to Mahoney by Mansour. On the above date, to-wit, December 10, 1925, Mahoney gave to Mansour two promissory notes, one for $1,000, payable on the 3d day of March, 1926, and one for $1,500, payable on the 1st day of April, 1926, in payment for the said corn and other feed. But Mansour retained no lien on the property sold to Mahoney, nor did he take security of any kind for the payment of said notes. Mansour was a resident and citizen of Valentine, Neb. The said notes were executed and delivered to Mansour at Valentine, Neb., and were payable at the Farmers' National Bank in Valentine, Neb.

At the time of the execution and delivery of the notes last above mentioned, Mahoney told Mansour that, if he would present them at the Citizens' Bank at Johnstown, said bank would pay him the money due thereon. Pursuant to such information, the defendant Mansour, within a day or two thereafter, took said notes to the said bank at Johnstown, and, failing to find the plaintiff at the bank, left the said notes with one of the employees, telling such employee what Mahoney had told him. Within a few days thereafter the plaintiff in this action, J. A. Holt, who was then president or cashier of the said bank, returned said notes to Mansour at Valentine, Neb. Mansour testified that, when Holt returned said notes, he told Mansour that he did not have the money to pay said notes, and further said: "Mahoney owes us more money than we can loan him and we couldn't take care of those notes, but if you will let Mr. Mahoney feed the corn and hay, we will pay those notes from the first proceeds off from them cattle and hogs on your place."

This conversation took place on or about the 20th day of December, 1925, but nothing was said about the mortgage that Mahoney had given to the Johnstown bank. Mansour testified that at a later date he had another talk with plaintiff, and that plaintiff again told him that he would pay the said notes. The Mansour notes were not paid when due, and about that time he learned, for the first time, that the plaintiff had the mortgages on the Mahoney cattle and hogs. Mansour then went to Mahoney, and, with actual knowledge of the existence of plaintiff's mortgages, procured from him a chattel mortgage on so much of the said live stock as had not then been sold to secure the payment of the two notes that Mahoney had given to Mansour on the 10th day of December, 1925. Mansour, claiming his said chattel mortgage to be superior in right to the mortgages that had been given to plaintiff, instituted proceedings to foreclose the same. Plaintiff then commenced this action. A receiver was appointed. The mortgaged property was sold, and the receiver is holding a sufficient amount of the proceeds of such sale to pay Mansour's notes in case final judgment should be in his favor. Defendant Mahoney entered no appearance in the case and the controversy was between plaintiff and Mansour.

Findings of fact, conclusions of law, and judgment were for plaintiff, and defendant Mansour appeals.

 The chattel mortgages given to the plaintiff at Johnstown, Neb., do not contain a receipt over the name of the mortgagor as required by sections 1578, 1579, Rev. Code 1919; therefore they were void under these statutes; they were not entitled to be filed, and did not impart constructive notice of respondent's rights. Because of these facts, appellant contends that said mortgages do not constitute a lien on the mortgaged property, and that he is entitled to payment in full of the amount due on his said notes before anything shall be paid to the plaintiff. On the other hand, plaintiff contends that his notes and the said chattel mortgages are Nebraska contracts, that they constitute good and valid chattel mortgages under the laws of the state of Nebraska, and that they should be governed by the laws of the state where executed, and be given the same force and effect as though the laws of this state had been fully complied with.

Appellant cites a formidable array of authorities in support of his contention, and it may be that such contention is supported by the weight of authority, but it is needless to review such authorities, because this court is already on record in support of the rule to the contrary. The case of Grieme v. Robkes, 45 S. D. 480, 188 N. W. 745, decided by this court in August, 1922, is directly in point. The note involved in that case and the mortgage given to secure the same were both executed and delivered at Galva in the state of Iowa. At the time of the execution of the mortgage, the property described therein was located in Brookings county in this state. The mortgage constituted a good and valid chattel mortgage under the laws of the state of Iowa, but it did not contain the receipt by the mortgagor for a copy of the mortgage as required by the provisions of sections 1578, 1579, Code of 1919, and would therefore have been void had it been executed in South Dakota. But this court held that the mortgage being good at the place where it was executed constituted a valid lien as between the parties in this state. This case was followed by the Supreme Court of Iowa in Kusser v. Sioux City Horse & Mule Co., 199 Iowa, 200, 200 N. W. 404. In that case, like the one last cited, the note and mortgage were executed in the state of Iowa while the property de-

scribed in the mortgage was located in Hyde county, S. D. In the course of the opinion in that the case the Iowa court say: "There can be no question that the mortgage is a valid contract between the parties thereto and created a valid lien. It must be judged by the law of the state where executed and payable. That state is Iowa. The situs of the property is immaterial as far as the rights of the parties to the mortgage are concerned."

These two cases had both been published before the mortgages involved in this case were executed and the plaintiff had a right to rely upon the same when his mortgages were executed. Likewise the defendant Mansour had these cases staring him in the face when he, with actual knowledge of plaintiff's mortgages, took his mortgage on the 2d day of April, 1926. In order to sustain appellant's position, we would be compelled to overrule Grieme v. Robkes, supra, and this we do not feel justified in doing and hold that plaintiff's mortgages were superior in right to the Mansour mortgage.

As another reason, assigned by appellant, why his claim should be held to be superior to the claims of plaintiff, and why plaintiff should be estopped from asserting a superior claim, is the contention of appellant that plaintiff promised to see that he (appellant) received his money for the corn and other feed he had sold to Mahoney. Appellant contends that, because of what plaintiff said in this respect, he refrained from taking any action to enforce his claim, and permitted Mahoney to continue using said corn and other feed. But what, if any, rights appellant may have acquired because of any promise that may have been made by plaintiff is not properly before the court. It is not conceded that any promise whatever was made by plaintiff; indeed, plaintiff expressly denied making such promise, and the trial court made no finding of fact relative to such promise; nor did appellant propose or request such finding. There is nothing in the record upon which to predicate this assignment of error.

Other questions argued in the brief have been examined, but we find nothing that could have prejudiced the appellant.

The judgment and order appealed from are affirmed.

CAMPBELL, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.